UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-147-GWU

RANDY FOSTER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Foster

> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Foster

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Foster

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Foster

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Randy Foster, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of coronary artery disease, degenerative disc disease of the lumbar spine, mild coal workers pneumoconiosis, and mild osteoarthritis of the left thumb and elbow. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Foster retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 22-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional impairments. He: (1) would require a sit/stand option with no prolonged standing or walking in excess of one-half hour to one hour without interruption; (2) could only

Foster

occasionally push or pull or use hand controls with the left upper extremity, and could do no repetitive reaching overhead with the left upper extremity; (3) could never climb ladders, ropes, or scaffolds or crawl; (4) could occasionally stoop, kneel, crouch, bend, twist, or climb ramps or stairs; (5) needed to avoid concentrated exposure to extreme cold or heat, fumes, odors, dusts, gases and full body vibration; and (6) needed to avoid exposure to hazards, dangerous machinery, and unprotected heights. (Tr. 477-8). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 479).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Foster alleged disability beginning February 24, 2003 due to heart problems, osteoarthritis in both hands, and arthritis in the back. (Tr. 67-8). He testified that, in addition to chest pain from blockages in his heart, he also had a blockage in an artery to his legs which caused leg pain with walking or sitting for long periods of time. (Tr. 460). He also had back pain from bad disks in his back, arthritis in both hands, and used inhalers for Black Lung Disease, although he continued to smoke cigarettes. (Tr. 460, 464, 466 ). He took three Nitroglycerin tablets a day, but rarely had chest pain at rest. (Tr. 461). He felt that he could walk

for 8 to 10 minutes, stand for 20 minutes, sit for 30 minutes, and lift 10 to 20 pounds off a table. (Tr. 464-5).

The basis of the ALJ's residual functional capacity finding came from the opinions of the state agency reviewing physicians, S. Mukherjee and J. E. Baez Garcia, who reviewed the evidence in August and November, 2003 respectively (Tr. 381-96); to this basis, the ALJ added additional non-exertional restrictions. The plaintiff objects that insufficient weight was given to the opinions of his treating physicians.

One of the treating physicians was Dr. Charles R. Combs, an orthopedist and specialist in hand surgery. (Tr. 301). Dr. Combs treated Mr. Foster beginning in January, 2002, over year before his alleged onset date, for a left hand injury which had occurred in October, 2001. (Tr. 315). During the course of the calendar year 2002, Dr. Combs removed a small foreign body from the plaintiff's left hand, and obtained a normal arthritis profile and two EMG/NCV studies of the upper extremities, which were also normal. (Tr. 303,314). Prior to obtaining testing, he had placed Mr. Foster on "totally disabled status." (Tr. 316). Mr. Foster returned to work in March, 2002, following removal of the foreign body from his left hand (Tr. 310), but returned for further evaluation of arm pain in December of that year (Tr. 303). An MRI showed "slight" biceps insertion tendonopathy. (Id.). Most of the plaintiff's pain was in the left elbow and an x-ray showed a small spur of the left hand

Foster

and a small osteophyte on the left epicondyle. (Tr. 300). The doctor diagnosed left tennis elbow syndrome, and osteoarthritis and told the patient not to lift or grip over two pounds with the left upper extremity, to avoid vibrations, and wear a splint except when bathing and sleeping. (Tr. 299-300). However, these restrictions were only said to apply through March 10, 2003, and there is no indication that they were ever made permanent. (Tr. 299). Given the fact that the ALJ included restrictions on avoiding vibrations and the repeated use of the left upper extremity, the only restriction given by Dr. Combs which was not essentially followed was the restriction to lifting two pounds with the left upper extremity. Dr. Mukherjee indicated that the evidence was insufficient to support a finding of osteoarthritis in the hands (Tr. 386), and, especially in view of the plaintiff's testimony at the administrative hearing that he could lift 10 to 20 pounds (Tr. 465) and his apparent statement in January, 2004 to a physician who was examining him for Black Lung purposes that he could lift "about 30-40 lbs. without shortness of breath" (Tr. 419), the ALJ's choice not to follow the lifting restriction given by Dr. Combs is supported by substantial evidence.

     Another treating physician, Dr. Jean Sullivan, is cited by the plaintiff, but her statement on a prescription pad in August, 2000, more than two years before the alleged onset date, that the plaintiff "must have one day off every week or you will not have this employee alive!!" is apparently in reference to Mr. Foster's statement that he was then working 80 to 100 hours a week. (Tr. 372-4). In any case, the fact

Foster

that the plaintiff continued working for more than two years following the statement makes it of limited value for purposes of his present application.

In addition, the plaintiff cites his treating cardiologist, Dr. N. Rao Podapati, who indicated on several occasions that Mr. Foster was totally and permanently disabled. (Tr. 399, 403, 441, 445). The ALJ declined to accept this conclusory statement on the ground that it was not supported by the physician's objective findings; specifically, exercise stress tests showing he was "Functional Class I" in April, 2002 (Tr. 417) and January 2003 (Tr. 406-7) and "Functional Class II" in February, 2005 (Tr. 442-3). "Functional Class I" is defined by the New York Heart Association as referring to an individual who has "cardiac disease but no resulting limitation of physical activity; ordinary physical activity does not cause undue fatigue, palpitation, dyspnea, or anginal pain." American Medical Association, Guides to the Evaluation of Permanent Impairment (Fifth Edition, 2001), p. 26. "Functional Class II" is defined as "cardiac disease resulting in slight limitation of physical activity; is comfortable at rest and in the performance of ordinary, light, daily activities; greater than ordinary physical activity, such as heavy physical exertion, results in fatigue, palpitation, dyspnea, or anginal pain." The latter definition is consistent with the plaintiff's own description at the administrative hearing of having no chest pain at rest. (Tr. 460). Dr. Podapati also stated in his February 24, 2005 letter that the results of the stress test that the plaintiff at a functional class between II and III (Tr.

11

441), but the actual report, as previously noted, said only Class II (Tr. 443). In view of the inconsistencies between Dr. Podapati's statements and his test results, the fact that his statement that the plaintiff was totally and permanently disabled was a vocational conclusion outside his area of expertise, and the fact that the ALJ gave good reasons for declining to accept his opinion, see Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004), the Court concludes that substantial evidence supports the rejection of the opinion of the treating physician under the circumstances of this particular case.

Finally, the plaintiff has failed to show how the diagnosis of depression by Dr. Combs resulted in actual functional restrictions. Apparently, Dr. Combs had obtained a "psychosocial evaluation," although the actual report is not in his records, which indicated that the patient was under stress at work and had underlying tension and depression. While he felt that the plaintiff would be held by mental health treatment and possibly antidepressant medications, and diagnosed depression, Dr. Combs did not give any restrictions (Tr. 299-300), the plaintiff did not allege mental problems as part of his application, and he testified that his treating physician had never referred him for mental health counseling (Tr. 466).

The plaintiff also cites a post-decision letter of Dr. Sullivan indicating that he is "totally disabled for any physical work" (Tr. 449), but in addition to being conclusory, no "good cause" has been given for failing to obtain the additional

Foster

evidence in time for it to be considered by the ALJ. Consequently, it does not provide a basis for remand. Hollon ex rel. Hollon v. Commissioner of Social Security, 447 F.3d 477, 483-4 (6th Cir. 2006).

The decision will be affirmed.

This the 9th day of February, 2007.

Signed By:

*G. Wix Unthank*

United States Senior Judge